UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| JASKIRAT SINGH, | : | |
| Defendant. | : | Electronically Filed |

INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

COUNT 1
18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

Introduction

At all times material to this Information:

1. The defendant, Jaskirat Singh, resided in Columbia, Maryland.

The Conspiracy

2. Beginning in or about June of 2025 and continuing until on or about July 23, 2025, in the Middle District of Pennsylvania and elsewhere, the defendant,

JASKIRAT SINGH,

did knowingly, willfully, and intentionally combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury, to commit wire fraud, that is, to knowingly and with intent to defraud, devise and intend to devise a scheme to defraud and to obtain money from others by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and for the purpose of executing such scheme to defraud and to obtain money, caused the transmission of certain signs, signals, writings, pictures, and sounds in interstate and foreign commerce by means of wire communications, in violation of Title 18, United States Code, Section 1343.

## Manner and Means of the Conspiracy

3. It was part of the conspiracy that members of the conspiracy, including the defendant, Jaskirat Singh, communicated with other members of the conspiracy and traveled throughout the Middle District of Pennsylvania, and elsewhere, to execute a scheme to defraud their victims, many of whom are elderly, of money and property, by means of fraudulent pretenses, representations, and promises.

4. It was further part of the conspiracy that members of the conspiracy would transmit an electronic communication to the victims. The communication, often in the form of a phone call or home computer screen "pop-up," was purportedly from "Microsoft" or a government agency, and informed the victim that the victim's computer had been "hacked", and that financial account security was compromised. The "pop-up" or caller provided a phone number for the victim to call.

5. It was further part of the conspiracy that upon calling the phone number, the victim would be connected to a member of the conspiracy, who provided the victim with disinformation. Often, the member of the conspiracy falsely informed the victim that there was a problem with the victim's bank account, that the victim's bank account was not secure, or that there was illegal activity on the computer, and that the victim needed to transfer money from the account to keep the money secure. Thereafter, the member of the conspiracy directed the victim to withdraw cash from the victim's bank account or convert cash into gold bars or coins.

6. It was further part of the conspiracy that, during the phone calls, members of the conspiracy would continue to provide the victims

with various compelling reasons, all of which were false, for the victims to make cash withdrawals and transfers of funds. Typically, several phone calls were exchanged between members of the conspiracy and the victims.

7. It was further part of the conspiracy that members of the conspiracy, through these materially false and fraudulent pretenses, representations, and promises, thereby induced the victims to make large cash withdrawals from the victims' bank accounts or provide gold bars or coins.

8. It was further part of the conspiracy that, to conceal the crime, members of the conspiracy told the victims not to share the information related by the conspirator with anyone else.

9. It was further part of the conspiracy that members of the conspiracy told the victims that a "federal agent" with the Federal Trade Commission or other agency would be arriving at the victims' residence, or another planned location, to pick up the cash which the victims had withdrawn from their bank accounts, or to collect gold bars or coins. The victims were often told that the "federal agent" would ensure the safekeeping of the victims' cash or gold.

10. It was further part of the conspiracy that members would instruct the victims to meet the "agents" at locations including the victims' homes, convenience stores, and restaurants.

11. It was further part of the conspiracy that members of the conspiracy would provide the victims with a "code word" which the "federal agent" would later provide to the victims upon arrival at the victims' residences and meeting locations.

12. It was further part of the conspiracy that members of the conspiracy, including the defendant, Jaskirat Singh, used several "couriers", including Singh, to pose as "federal agents" and retrieve money, in the form of United States currency or gold bars or coins, from the victims at the victims' residences and other locations.

13. It was further part of the conspiracy that members of the conspiracy, including the defendant, Jaskirat Singh, utilized the "WhatsApp" messenger application to communicate with each other, to request information regarding the availability of the couriers to collect the cash from the victims, and to provide the victims' addresses and identifying information to the couriers.

14. It was further part of the conspiracy that members of the conspiracy, including defendant Jaskirat Singh, received supervision by members of the conspiracy.

15. It was further part of the conspiracy that members of the conspiracy, including the defendant, Jaskirat Singh, acted as couriers, traveled to the victims' residences and other locations, posed as "federal agents," provided "code words" to the victims upon arrival, and retrieved and attempted to retrieve money, in the form of United States currency or gold bars or coins, from the victims at the victims' residences and other locations, in the Middle District of Pennsylvania and elsewhere.

16. It was further part of the conspiracy that members of the conspiracy, including the defendant, Jaskirat Singh, communicated with each other via the "WhatsApp" messenger application, text messages, and phone calls, to confirm the "pick-ups" of United States currency or gold bars or coins from the victims and the total amount of currency received from the victims. These communications sometimes included pictures and video recordings showing the cash or gold collected from the victims.

17. It was further part of the conspiracy that the members of the conspiracy acting as couriers delivered the United States currency or gold obtained from the victims to other members of the conspiracy, including individuals and Indian jewelry stores in Harrisburg, Pennsylvania; Etna, Ohio; and Flushing, New York.

18. It was further part of the conspiracy, that when couriers visited the Indian jewelry stores, the couriers used code words including "token" when dealing with owners or employees of the Indian jewelry stores, who would then give the couriers cash for the gold.

19. It was further part of the conspiracy that members of the conspiracy, including the defendant, Jaskirat Singh, would transfer money, gold bars, or gold coins to other members of the conspiracy, by means including electronic funds transfers including, but not limited to, "Zelle" and "Remitly".

20. It was further part of the conspiracy that members of the conspiracy paid the couriers, including the defendant, Jaskirat Singh, for their services as couriers.

21. It was further part of the conspiracy that members of the conspiracy communicated with each other, and with the victims, via

phone calls, text messages, the "WhatsApp" messenger application, computer, and the internet, which were signs, signals, writings, pictures, and sounds transmitted in interstate and foreign commerce by means of wire communications.

22. It was further part of the conspiracy that members of the conspiracy directed victims in the Middle District of Pennsylvania and elsewhere to pay and transfer at least $1,549,000 through materially false and fraudulent pretenses, representations, and promises.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1. The allegations contained in Count 1 of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Sections 1349 and 1343, the defendant,

**JASKIRAT SINGH,**

shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation.

3. By virtue of the commission of the offense charged in Count 1 of this Information, by the defendant,

## JASKIRAT SINGH,

any and all right, title, and interest the defendant may have had in any of the property involved in or traceable to the offense alleged in Count 1 of this Information is vested in the United States and is hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

4. If any of the property involved in or traceable to the offense alleged in Count 1 of this Information, because of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(e) and (f) and Title 28, United States Code, Section 2461(c).

  All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

JOHN C. GURGANUS
United States Attorney

_____
ROBIN ZENZINGER
Assistant United States Attorney

__October 15, 2025__
Date

10